1   MICHAEL J. BIDART #60582
2   mbidart@shernoff.com
    RICARDO ECHEVERRIA #166049
3   recheverria@shernoff.com
4   DANICA CRITTENDEN #273309
    dcrittenden@shernoff.com
5   **SHERNOFF BIDART ECHEVERRIA LLP**
6   600 South Indian Hill Boulevard
7   Claremont, California 91711
    Telephone:   (909) 621-4935
8   Facsimile:   (909) 625-6915

9
    Attorneys for Plaintiff and the Proposed Class
10

11          **UNITED STATES DISTRICT COURT**
            **CENTRAL DISTRICT OF CALIFORNIA**
12

13  DENISE STOTT, Individually and on          Case No.: 2:24-cv-07395
    Behalf of All Others Similarly Situated,
14                                             **CLASS ACTION COMPLAINT**
                                               **FOR:**
15          Plaintiff(s),

16                                             (1) BREACH OF CONTRACT,
    vs.                                        INCLUDING BREACH OF THE
17                                             IMPLIED COVENANT OF GOOD
    UNITED SERVICES AUTOMOBILE                 FAITH AND FAIR DEALING;
18  ASSOCIATION, USAA CASUALTY                 (2) VIOLATION OF THE BUSINESS
    INSURANCE COMPANY, USAA                    AND PROFESSIONS CODE § 17200;
19  GENERAL INDEMNITY COMPANY,                 (3) FRAUD BY DECEIT;
    GARRISON PROPERTY AND                      (4) VIOLATION OF INSURANCE
20  CASUALTY INSURANCE                         CODE § 781;
    COMPANY, AND CCC INTELLIGENT               (5) NEGLIGENCE; AND
21  SOLUTIONS, INC.,                           (6) DECLARATORY RELIEF
22
23          Defendants.                        **JURY DEMAND**
24
25
26
27
28

                        - 1 -
                 CLASS ACTION COMPLAINT

1    Plaintiff Denise Stott ("Plaintiff"), on behalf of herself and on behalf of all
2    other similarly situated, bring this action against Defendant United Services
3    Automobile Association ("USAA-Association") and USAA Casualty Insurance
4    Company ("USAA-CIC") USAA General Indemnity Company ("USAA-GIC"),
5    Garrison Property and Casualty Insurance Company ("Garrison") (collectively,
6    "USAA"), and CCC Intelligent Solutions Inc., d/b/a Auto Injury Solutions ("AIS")
7    (USAA and AIS are hereinafter referred to as "Defendants") to recover monetary
8    damages, injunctive relief, declaratory relief, and other remedies for breach of
9    contract, fraud by deceit and conspiracy to commit fraud by deceit, violations of
10   California Insurance Code § 781 and conspiracy to violate California Insurance
11   Code § 781, conspiracy to violate the California Business Practices Act, and
12   negligence and negligence per se. The following allegations are based upon
13   Plaintiff's personal knowledge with respect to their own acts and based upon
14   information and belief as to all other matters.



## I.    INTRODUCTION

16    1.    This action concerns USAA's improper conspiracy and scheme
17   designed to systematically, wrongfully, and arbitrarily deny its insureds first-party
18   medical payments ("MedPay") insurance benefits owed them under their USAA
19   insurance policies.[1]

20    2.    Instead of fulfilling its duty to investigate each bill for medical
21   expenses submitted by its California insureds, USAA engages in a multifaceted
22   scheme whereby USAA improperly delegates its insurance claims adjustment
23   duties to AIS, who arbitrarily and improperly reduces or denies MedPay claims
24   using its automated Medical Bill Audit ("MBA") process.

25    3.    The MBA process is designed, largely through automated computer
26   processes, to categorically eliminate, abate, and/or reduce the amount USAA pays

---

[1] MedPay is a first-party benefit coverage for which the insured has paid a separate premium.

1  for its insured's health care expenses based upon various codes, including PPO

2  codes, DOC codes, PR codes, GR codes, IR codes, and RF codes.

3      4.    Specifically, in furtherance of its scheme, USAA, through AIS's

4  MBA process, reduces the amounts USAA will pay in connection with its

5  insureds' medical bills using PPO codes which utilize allowable billing rates under

6  agreements between other insurers and preferred provider organizations ("PPO")

7  and preferred provider networks ("PPN"),[2] even though USAA has no direct PPO

8  or PPN agreements with its insureds' healthcare providers.

9      5.    Also, in furtherance of its scheme, USAA denies reimbursement of

10  PIP and/or MedPay claims based on DOC codes whereby USAA directs AIS to

11  program its computer to deny payment of medical bills covered under PIP and/or

12  MedPay claims if certain documents are not attached to the bills, even though the

13  documentation is not needed to substantiate the necessity of the billed treatments.

14      6.    Additionally, in furtherance of its scheme, USAA denies

15  reimbursement of MedPay claims amounts, using PR codes, on the basis that the

16  medical expenses are not medically reasonable or necessary and/or causally

17  connected to the accident, relying on sham medical review services provided by

18  physicians engaged by AIS pursuant to the MBA process. These sham medical

19  review services are conducted after bogus preset "flags" are triggered pursuant to

20  guidelines programmed into the MBA process including, for example, a gap in

21  treatment by an arbitrarily set number of days, or treatment exceeding an arbitrarily

22  set number, *e.g.*, the 13th chiropractic visit. In denying payment, USAA relies on a

23  letter written by the AIS engaged physician in connection with the sham medical

24  review. The physician conducts only a cursory, hollow review of the provider

25  notes and related documents contained in the AIS database and does not

26  communicate with either the insured or the insured's provider. USAA does not

27

28  _____

[2] Unless otherwise specified, PPO and PPN are collectively referred to herein as "PPO."

SHERNOFF BIDART
ECHEVERRIA LLP
LAWYERS FOR INSURANCE POLICYHOLDERS

1  conduct any independent investigation, but instead relies only on the sham
2  physician review in denying reimbursement of the insured's MedPay claim.

3      7.    Moreover, in furtherance of its scheme to deny or reduce the payment
4  of MedPay benefits, USAA relies on AIS's automated review process using preset
5  "flags" or "codes" that deny a MedPay claim on the basis that the provider
6  treatment is not causally related to the accident if the provider does not check the
7  box "Auto Accident" on the standard "Health Insurance Claim Form" under the
8  inquiry: "IS PATIENT'S CONDITION RELATED TO:" The USAA adjuster does
9  not conduct any adjustment of the claim and does not investigate whether the
10  treatment was causally related to the accident, but instead denies reimbursement of
11  the MedPay claim based only on the MBA automated process.

12      8.    Additionally, in furtherance of its scheme to deny or reduce the
13  payment of MedPay benefits, USAA reduces payment for medical provider bills,
14  using RF codes, whenever an automated review process, conducted by AIS
15  pursuant to its contract with USAA, indicates that the charge for a particular
16  procedure exceeds a certain arbitrary threshold established in a database
17  maintained by the actuarial firm Milliman, Inc. (the "Milliman Database"). The
18  Milliman Database is comprised of an outdated 5% nationwide sample of charge
19  data from patients over 65 collected by the U.S. Department of Health and Human
20  Services/Centers for Medicare and Medicaid Services ("Medicare"). This Medicare
21  patient sample has no bearing on the reasonableness of charges for the medical
22  services provided to USAA's insureds, does not reflect the entire range of fees
23  charged in the geographic area where the medical services are provided, and is
24  comprised of data not organized by a provider's years of experience, background,
25  or qualifications. USAA denies or reduces payment of its insureds' medical bills
26  based only on AIS's automated review process and does not conduct any
27  independent or individualized review to assess whether the charge is a reasonable
28  and necessary medical expense.

SHERNOFF BIDART
ECHEVERRIA LLP
LAWYERS FOR INSURANCE POLICYHOLDERS

9.     This action seeks to remedy USAA's improper and unlawful conduct and enjoin USAA from continuing to perpetrate its scheme against its California insureds through the improper processing, adjustment, and payment of MedPay benefits.

**II.    PARTIES**

10.    Plaintiff Denise Stott is a resident of Merced, California, in Merced County, who was injured in an automobile collision on January 21, 2020, in Merced County, California. At the time of the collision, Plaintiff was insured under a USAA-CIC policy that included $100,000 in MedPay coverage.

11.    At all times material hereto, Defendant USAA-Association was, and still is, a reciprocal interinsurance exchange licensed to do business in the State of California. USAA-Association has sold and/or underwritten thousands of automobile insurance policies to California residents that provided MedPay coverage requiring the payment of all reasonable and necessary medical expenses incurred by a covered person arising from a covered accident. The MedPay policies at issue in this case were issued by USAA-Association to California residents.

12.    At all times material hereto, Defendant USAA-CIC was, and still is, a corporation organized under the laws of Texas with a principal place of business in Texas. USAA-CIC has sold and/or underwritten thousands of automobile insurance policies to California residents that provided MedPay coverage requiring the payment of all reasonable and necessary medical expenses incurred by a covered person arising from a covered accident. USAA-CIC is a wholly-owned subsidiary of USAA-Association.

13.    At all times material hereto, Defendant USAA-GIC was and is a corporation organized under the laws of Texas with a principal place of business in Texas. USAA-GIC has sold and/or underwritten automobile insurance policies in California, and throughout the United States, which provided MedPay coverage



SHERNOFF BIDART
ECHEVERRIA LLP
LAWYERS FOR INSURANCE POLICYHOLDERS

CLASS ACTION COMPLAINT

1    requiring the payment of all reasonable and necessary medical expenses incurred

2    by a covered person arising from a covered accident. USAA-GIC is a wholly-

3    owned subsidiary of USAA. MedPay policies at issue in this case were issued by

4    USAA-GIC to California residents.

5         14.    At all times material hereto, Defendant Garrison was and is a

6    corporation organized under the laws of Texas with a principal place of business in

7    Texas. Garrison has sold and/or underwritten automobile insurance policies in

8    California, and throughout the United States, which provided MedPay coverage

9    requiring the payment of all reasonable and necessary medical expenses incurred

10   by a covered person arising from a covered accident. Garrison is a wholly-owned

11   subsidiary of USAA. MedPay policies at issue in this case were issued by Garrison

12   to California residents.

13        15.    At all times material hereto, Defendant AIS is a Delaware corporation

14   with a principal place of business in Illinois.

15        16.    USAA-Association, USAA-GIC, USAA-CIC and Garrison hold

16   themselves out and identify themselves in California as USAA. USAA-

17   Association, the parent company, exercises total domination over, and directs and

18   unduly controls, USAA-CIC, USAA-GIC, and Garrison; and exercises total

19   domination over, and directs and unduly controls, all actions of USAA-CIC,

20   USAA-GIC, and Garrison, including all actions relating to the improper

21   processing, adjustment, and payment of MedPay benefits.

22        17.    USAA commingle funds, file joint tax returns, share principal office

23   addresses, and share registered agents and officers.[3]

24        18.    USAA-Association negotiated and entered the contract with AIS on

25   behalf of itself, as well as USAA-CIC, USAA-GIC, and Garrison.[4]

26

27   [3] *See* USAA-Association, USAA-CIC, USAA-GIC, and Garrison filings, showing that USAA

28   file joint tax returns and share principal office addresses, and showing that USAA-CIC, USAA-GIC, and Garrison have the same officers and directors or trustees.

CLASS ACTION COMPLAINT

19.    USAA-Association has totally dominated and unduly controlled USAA-CIC, USAA-GIC, and Garrison to such an extent that USAA-CIC's, USAA-GIC's, and Garrison's independent existences were in fact non-existent, and USAA-Association was in fact the alter ego of USAA-CIC, USAA-GIC, and Garrison and USAA-CIC, USAA-GIC, and Garrison are instrumentalities of USAA-Association.

20.    The corporate forms of USAA-Association, USAA-CIC, USAA-GIC, and Garrison were used for an improper purpose to allow USAA to engage in an improper scheme designed to systematically, wrongfully, and arbitrarily deny Plaintiff's' first-party MedPay insurance benefits owed under their USAA insurance policies. USAA was able to engage in this improper scheme through the contract and unlawful arrangement between USAA-Association and AIS through which USAA improperly denied or reduced MedPay claims.

21.    The improper use of the corporate forms caused injury to Plaintiff and all Class Members allowing Defendants to systematically, wrongfully, and arbitrarily deny them first-party MedPay insurance benefits owed under their USAA insurance policies.

## III.    JURISDICTION

22.    This Court has subject matter jurisdiction over Plaintiff's claims pursuant to 28 U.S.C. § 1332(d)(2). This is a class action in which there is diversity of citizenship between at least one plaintiff class member and one defendant; the

---

[4] Declaration of Joley Day-Mayfield in Support of Defendants' Opposition to Plaintiff's Motion to Remand, filed in *Peoples v. United States Automobile Association, et al*., United States District Court Western District of Washington, No. 2:18-cv-01173-RSL (ECF 15), pg. 3, ¶ 8 (Joley Day-Mayfield, USAA-Association's Director Claims Policy, states under oath that AIS is USAA-Association's "third-party vendor," carefully referring to USAA-Association as the party with vendor relationship with AIS, rather than "Defendants," where "Defendants" is collectively referring to USAA-Association and USAA-CIC).

CLASS ACTION COMPLAINT

SHERNOFF BIDART ECHEVERRIA LLP
LAWYERS FOR INSURANCE POLICYHOLDERS

1    proposed Classes each exceed one hundred members; and the matter in controversy

2    exceeds the sum of $5,000,000.00, exclusive of interest and costs.

3        23.    Venue is proper in this Court pursuant to 28 U.S.C. § 1391.

4    Defendants regularly conduct business in this District and a substantial part of the

5    events giving rise to the claims asserted herein occurred in this District.

6        24.    The Court has personal jurisdiction over AIS because this suit arises

7    out of and relates to AIS's contacts with the forum. AIS's suit-related conduct

8    created a substantial connection with the state of California. AIS is essentially

9    adjusting Plaintiff's and the California putative class members' MedPay claims.

10   AIS directly communicates with Plaintiff and the putative class members. AIS

11   requires its California insureds to send their medical information and documents to

12   AIS. AIS reduces and denies reimbursement of their MedPay claims using its

13   computerized MBA system and the associated flags and codes. Arbitrarily set flags

14   are triggered in AIS's MBA system, *e.g.*, a flag triggered after the 13th chiropractic

15   visit, resulting in sham physician reviews conducted by physicians engaged by AIS

16   who recommend that reimbursement be denied. These AIS engaged physicians

17   make these bogus recommendations without ever examining the insured and

18   without communicating with the insured. USAA adjusters simply follow these

19   bogus recommendations without adjusting these claims.

20       25.    AIS sends Explanation of Reimbursement ("EOR") to USAA's

21   California insureds identifying these reductions and denials of their MedPay claims

22   and the codes associated with these unlawful reductions and denials. AIS further

23   explains to USAA's insureds that if they desire to appeal the decisions set forth in

24   the EORs sent by AIS to the insureds, they must appeal the decision to AIS.

25   USAA's adjusters conduct no real or legitimate adjusting of these MedPay claims.

26       26.    AIS has purposely directed its activities at the state of California by

27   committing the foregoing intentional acts which were expressly aimed at State of

28   California, and which caused harm in California—harm which AIS knew would be

SHERNOFF BIDART
ECHEVERRIA LLP
LAWYERS FOR INSURANCE POLICYHOLDERS

1   suffered in the state of California. There is a causal connection between AIS's

2   contacts with the state of California and Plaintiff's claims. AIS cannot show that

3   the exercise of jurisdiction would be unreasonable.

4       27.    Venue is proper in this Court pursuant to 28 U.S.C. § 1391.

5   Defendants regularly conduct business in this District and a substantial part of the

6   events giving rise to the claims asserted herein occurred in this District.

7

8   IV.    **FACTUAL ALLEGATIONS**

9       A.    **USAA's Provision of MedPay Services, and the Contractual and**

10              **Regulatory Provisions Pertaining to the Provision of Such**

11              **Services**

12      28.    USAA specifically targets and markets to military service members

13  and their families for the purpose of selling insurance products. USAA represents

14  that it is committed to taking care of and supporting military service members and

15  their families, touting that "[w]hen you join USAA, you become part of a family

16  who stands by you during every stage of your life."

17      29.    USAA offered and sold MedPay coverage to California consumers,

18  including Plaintiff.

19      30.    Pursuant to its insurance policies with Plaintiff and the putative class

20  members, USAA must pay all reasonable and necessary medical expenses incurred

21  by a covered person arising from a covered accident.

22      31.    The California insurance statutes and regulations promulgated under

23  California Insurance Code § 790.03(h), and Title 10, Chapter 5, Subchapter 7.5,

24  are implied terms incorporated by law into, and are a part of, Plaintiff's and the

25  putative class members' respective insurance policies providing for MedPay.

26      32.    Under the California Insurance Code, § 790.03(h), the following are

27  classified as unfair methods of competition and unfair and deceptive acts or

28

CLASS ACTION COMPLAINT

SHERNOFF BIDART
ECHEVERRIA LLP
LAWYERS FOR INSURANCE POLICYHOLDERS

1   practices in the business of insurance when they are knowingly committed or

2   performed with such frequency as to indicate a general practice:

3           a.      "Failing to adopt and implement reasonable standards for the

4   prompt investigation and processing of claims arising under insurance policies."

5           b.      "Not attempting in good faith to effectuate prompt, fair, and

6   equitable settlements of claims in which liability has become reasonably clear."

7           c.      "Attempting to settle a claim by an insured for less than the

8   amount to which a reasonable person would have believed he or she was entitled

9   by reference to written or printed advertising material accompanying or made part

10  of an application."

11          d.      "Failing to provide promptly a reasonable explanation of the

12  basis relied on in the insurance policy, in relation to the facts or applicable law, for

13  the denial of a claim or for the offer of a compromise settlement."

14          33.     Under insurance regulations, Cal. Code Regs. tit. 10, § 2695.7 (b)(1),

15  when "an insurer denies or rejects a first party claim, in whole or in part, it shall do

16  so in writing and shall provide to the claimant a statement listing all bases for such

17  rejection or denial and the factual and legal bases for each reason given for such

18  rejection or denial which is then within the insurer's knowledge."

19          34.     Under insurance regulations, Cal. Code Regs. tit. 10, § 2695.7 (d),

20  insurers must "diligently pursue a thorough, fair and objective investigation and

21  shall not persist in seeking information not reasonably required for or material to

22  the resolution of a claim dispute."

23          35.     Under insurance regulations, Cal. Code Regs. tit. 10, § 2695.7 (e),

24  "[n]o insurer shall delay or deny settlement of a first party claim on the basis that

25  responsibility for payment should be assumed by others, except as may otherwise

26  be provided by policy provisions, statutes or regulations, including those pertaining

27  to coordination of benefits.

28

SHERNOFF BIDART ECHEVERRIA LLP
LAWYERS FOR INSURANCE POLICYHOLDERS

36.     Under insurance regulations, Cal. Code Regs. tit. 10, § 2695.7 (g), no insurer is allowed to "attempt to settle a claim by making a settlement offer that is unreasonably low."

37.     Pursuant to its insurance policies, USAA was required to pay its California covered MedPay benefits as follows:

a.     "The amount provided by an applicable agreement with a Preferred Provider Organization, Preferred Provider Network, or other similar agreement; or

b.     "The amount required, approved, or allowed by a fee schedule established by a state, federal, or other governmental entity in the relevant geographic area; or

c.     "The amount negotiated with the provider; or

d.     "The lesser of the following:

e.     The actual amount billed; or

f.     A reasonable fee for the service provided."

38.     USAA does not have an agreement with a PPO, PPN or similar organization, and there is no amount required, approved, or allowed by a fee schedule established by the State of California, the federal government, or other governmental entity in the relevant geographic area. Thus, under its agreements with its California insureds, USAA must pay the lesser of either the actual billed amount or a reasonable fee for the medical services provided.

39.     USAA made a fraudulent or reckless representation of facts as true (*e.g.* that USAA would pay in accordance with its MedPay policies), when Defendants knew they had a fraudulent cost containment scheme in place, viz., the AIS MBA System, which was designed to enrich Defendants to the detriment of USAA insureds. Defendants intended to deceive Plaintiff and the putative class, and also made such representations knowingly.

CLASS ACTION COMPLAINT

40.    Moreover, USAA and AIS conspired to conceal from USAA insureds that they would rely on AIS's MBA process to arbitrarily and unlawfully reduce and deny USAA insureds' MedPay claims using sham codes. USAA and AIS conspired to conceal from USAA insureds that they would subject USAA insureds' MedPay claims to AIS's MBA process's algorithms intentionally designed to deny and reduce claim reimbursement. Moreover, USAA and AIS conspired to conceal from USAA insureds that they would use arbitrary benchmarks to determine what costs for medical care were "reasonable."

41.    From at least February 20, 2019, to the present, thousands of USAA California insureds submitted reasonable medical expense bills for payment under MedPay coverage contained in policies purchased from USAA, and they will continue to do so.

42.    Under the terms of USAA's MedPay coverage, USAA assumed the obligation to investigate each bill for medical expenses submitted, to make coverage decisions based on readily available information, and to pay all reasonable and necessary medical expenses incurred for the treatment of injuries sustained in a covered occurrence.

43.    In sum, instead of investigating each bill for medical expenses submitted, Defendants conspired to arbitrarily deny and reduce MedPay claims submitted by their California insureds by improperly delegating USAA insurance claims adjustment duties to AIS who, through its MBA process, arbitrarily and improperly reduces or denies MedPay claims.

**B.    USAA's Agreement in Furtherance of its Conspiracy with AIS to Reduce and Deny MedPay Claims Using AIS's MBA Process Without Adjuster Involvement.**

44.    In furtherance of the conspiracy and scheme to deny or reduce the payment of MedPay benefits, USAA-Association contracts with AIS to use AIS's MBA process to reduce or deny reimbursement of MedPay benefits.

CLASS ACTION COMPLAINT

SHERNOFF BIDART ECHEVERRIA LLP
LAWYERS FOR INSURANCE POLICYHOLDERS

45.    AIS is not an insurance company. Nevertheless, USAA uses AIS's MBA process and automated, third-party bill-reviewing services to eliminate the need for the USAA insurer's adjuster or claims representative to undertake any individual investigation and evaluation of USAA's insureds' MedPay claims. USAA's use of AIS ensures a uniform practice for denying or reducing these claims.

46.    Upon information and belief, AIS is incentivized to universally and arbitrarily reduce or deny medical payment reimbursements, using its automated computer system and bogus physician letters, by touting USAA's savings resulting from the unlawful scheme to obtain greater compensation.

47.    AIS serves as USAA's agent in connection with USAA's evaluation and adjusting of MedPay claims submitted by USAA insureds.

48.    USAA improperly delegates its obligation to evaluate and adjust claims to AIS, including determining whether medical expenses are medically reasonable or necessary and/or causally connected to the accident, and for determining whether provider fees are reasonable.

49.    When insureds submit MedPay claims to USAA, Defendants instruct these insureds and their healthcare providers to send the supporting medical records and bills, including any appeals, to AIS, not USAA.

50.    Upon receipt of claim information from an insured, AIS conducts the MBA process. The MBA process is designed, largely through automated computer processes, to categorically eliminate, abate, and/or reduce the amount USAA pays for its insured's health care expenses based upon, among other things, coding errors, sham medical necessity reviews, and non-existent PPO contracts and confidential statistical information, rather than through reviewing the individual character of health care services required by an insured, their related expenses, or their treatment provider.



- 13 -

1    51.    After AIS's MBA process reduces or denies reimbursement for

2    MedPay claims, AIS generates and sends to USAA's insureds an EOR explaining,

3    *inter alia*, the charge for medical treatment by the provider by service date, the

4    amount by which USAA denies or reduces the charge for medical treatment, the

5    reimbursement amount, and the explanation for any reduction or denial.

6    52.    Defendants expressly and/or implicitly have agreed to keep secret, and

7    not to disclose to USAA insureds, the exact manner in which the MBA process

8    arbitrarily and unlawfully denies and reduces MedPay claims; thus even if a USAA

9    insured knew that the MBA system was used to evaluate their MedPay claims, they

10    could never verify the accuracy or the fairness of the evaluation.

11    53.    Defendants have conspired to withhold and conceal from USAA

12    insureds the nature of AIS's MBA process and the means by which AIS processes

13    and evaluates MedPay claims to systematically reduce and deny them.

14    54.    Defendants uniformly and consistently executed, applied, managed

15    and enforced the MBA process.

16    **C.    Using AIS's MBA Process, USAA Improperly Reduces MedPay**

17    **Payments, Using PPO Codes, Based on Non-Existent Agreements**

18    **with PPOs**

19    55.    AIS programs its computer MBA System to automatically and

20    arbitrarily deny, through the use of "PPO" codes, full payment of providers' bills

21    covered by MedPay, and to instead pay a lower rate based upon allowable billing

22    rates under undisclosed PPOs between other insurers and PPOs. USAA then

23    reduces its reimbursement to its insured even though it has no direct PPO

24    agreements with its insureds' healthcare providers or the PPOs.

25    56.    When a PPO code is listed as the reason for a reduction in

26    reimbursement, USAA, through AIS, falsely explains in the EOR that the

27    reduction is because "[t]his service provider participates in a PPO network and has

28    agreed to accept as payment in full the reimbursement amount listed in this line for

1    the service listed, and also has agreed not to seek any additional payment from the

2    patient."

3    57.    In reality, USAA has no agreements with PPOs, and providers have

4    not agreed with USAA that they will not seek additional payment from insureds.

5    58.    USAA applies these reduced MedPay reimbursements based on

6    fictitious PPO agreements and without investigating the reasonableness of the

7    charged amount.

8    59.    As a result of Defendants' improper reduction of MedPay

9    reimbursements based on non- existent PPO agreements with PPOs, insureds,

10    among other things, are balance-billed by their healthcare providers, become the

11    subject of collection actions by the providers seeking payment of the amounts that

12    USAA refuses to pay, and/or remain under the threat of such actions.

13    **D.    Using AIS's MBA Process, AIS Improperly Denies MedPay**

14    **Payments, Using DOC Codes, Based on Requests for Irrelevant**

15    **Additional Documentation, and Without USAA Conducting Any**

16    **Independent Review**

17    60.    USAA directs AIS to program its computer to automatically review

18    each bill by line item and to flag and deny payment of medical bills covered under

19    MedPay if certain documents are not attached to the bills. Even if the provider

20    submitted documents substantiating the need for treatment or its relationship to the

21    auto accident, the computer denies payment of the bill if USAA's preset

22    documentation requirement was not met.

23    61.    Instead of paying the claim, a "DOC" reason code is identified in the

24    EOR sent to the insured and a request is made to the insured or provider to submit

25    the additional unnecessary documentation.

26    62.    Such computer-generated denials are made without USAA adjusters

27    conducting any investigation as to whether the documentation was needed to

28    substantiate the necessity of the billed treatment.

CLASS ACTION COMPLAINT

SHERNOFF BIDART ECHEVERRIA LLP
LAWYERS FOR INSURANCE POLICYHOLDERS

63.    On information and belief, many DOC code denials and document request letters are sent to USAA insureds by AIS with no USAA adjuster involvement.

**E.    Using AIS's MBA Process, Defendants Improperly Deny MedPay Payments, Using PR Codes, on the basis that the Medical Expenses are not medically reasonable or necessary and/or Causally Related to the Accident, Relying on Sham Reviews by Physicians Engaged by AIS, and Without USAA Conducting an Independent Review**

64.    Defendants deny reimbursement of MedPay claims amount, using PR codes, on the basis that the medical expenses are not reasonably medically necessary and/or causally related to the accident, relying on sham medical review services provided by physicians engaged by AIS pursuant to the MBA process. These sham medical review services are conducted after bogus and arbitrary preset "flags" are triggered pursuant to guidelines programmed into the MBA process including, for example, a gap in treatment by an arbitrarily set number of days, or treatment exceeding an arbitrarily set number, *e.g.*, the 13th chiropractic visit.

65.    More specifically, the preset flags generate a bogus review by a nurse employed by AIS to purportedly determine whether medical expenses are medically reasonable or necessary and/or causally related to the accident. After the billing is routed to the physician engaged by AIS, the physician conducts a sham medical review to determine whether the medical expenses are medically reasonable or necessary and/or causally related to the accident and recommends that reimbursement be denied after only a cursory and hollow review of the insured's medical records. AIS then generates a bogus records review report created by the physician to substantiate its improper denials and reductions of payments for medically necessary treatment.

SHERNOFF BIDART ECHEVERRIA LLP
LAWYERS FOR INSURANCE POLICYHOLDERS

CLASS ACTION COMPLAINT

66.     AIS generates these sham records review reports without the AIS engaged physician conducting a physical examination of the insured, without communicating with the insured or treating provider, and without basis in fact obtained from a reasonable investigation. AIS then prepares an EOR which denies reimbursement based on the sham physician review and records review report.

67.     Defendants deny reimbursement of the provider's charge and the EOR is sent by AIS to USAA insureds based solely on the bogus records review report without USAA conducting any independent evaluation of the claims, and without any direct communication between AIS and USAA, and without any communication between USAA and the insured's provider.

68.     On information and belief, AIS pays its reviewers per records review report generated, which payment scheme improperly incentivizes the reviewers to generate records review reports hurriedly and without conducting a reasonable investigation into the medical necessity and reasonableness of the treatment provided to insureds.

69.     On information and belief, sham records review reports are frequently completed by physicians within minutes.

70.     On information and belief, manager approval is required for an adjuster to override an AIS assigned PR code, and USAA discourages adjusters to seek such approval such that it rarely, if ever, occurs.

71.     On information and belief, AIS is solely responsible for all appeal processes related to PR code denials. AIS requires USAA insureds or their healthcare providers to submit appeals directly to AIS. AIS processes these appeals without any adjuster involvement, and issues the new EOR setting forth its decision.

72.     On information and belief, USAA adjusters do not engage in any legitimate or real investigative activities or other adjusting functions concerning AIS PR code denials.

- 17 -
CLASS ACTION COMPLAINT

73.    AIS prepares and mails directly to USAA insureds the EORs containing PR codes and the records review reports prepared by physicians engaged by AIS. All paper correspondences with USAA insureds go directly through AIS. The EORs inform USAA insureds of the amount that will reimbursed under their MedPay policies. The provision of this information to insureds is typically in the purview of a licensed adjuster; thus, a reasonable person would assume that AIS is adjusting their MedPay claims. However, AIS is not a licensed adjuster. AIS is improperly engaging in the adjustment of USAA's insureds' MedPay claims without a license and improperly and arbitrarily reducing and denying these claims with USAA's approval and consent so as to financially benefit USAA and AIS to the detriment of USAA's insureds.

74.    In short, USAA improperly delegates to AIS its obligations to conduct a reasonable and fair investigation, evaluation, and adjustment of insureds' claims. USAA then denies reimbursement of its insureds' MedPay claims using AIS's MBA process and bogus physician review.

**F.    Using AIS's MBA Process, Defendants Improperly Deny MedPay Payments, Using GR Codes, on the Basis that the Medical Expenses are Not Causally Related to the Accident, and Without USAA Conducting Independent Review**

75.    Defendants deny reimbursement of MedPay claims amount, using GR codes, *viz.*, GR84, and advising the insured that the "Box 10, question B of the CMS1500 form indicates the medical treatment rendered is not related to an auto accident. Should this be an error, submit a corrected bill and include medical records for verification for the dates of service billed. Otherwise, services not related to an auto accident are not reimbursable."

76.    Before Defendants deny payment through AIS's MBA Process and GR code, USAA's adjusters do not investigate whether the medical treatment

CLASS ACTION COMPLAINT

1    rendered is related to an auto accident. Instead, USAA simply rubber stamps the

2    AIS determination and denies reimbursement.

3    **G.    Using AIS's MBA Process, Defendants Improperly Reduce**

4    **MedPay Payments, Using Reasonable Fee, or RF Codes, Which**

5    **Rely on Unsupported and Arbitrary Bill Thresholds, and Without**

6    **USAA Conducting an Independent Review**

7    77.    In furtherance of its scheme to deny or reduce the payment of MedPay

8    benefits, Defendants rely on AIS's automated review process to use preset

9    "reasonable fee" or "RF" codes, as directed by USAA. Specifically, Defendants

10    refuse to pay medical provider bills whenever an automated review process,

11    conducted by AIS pursuant to the MSA, indicates that the charge for a particular

12    procedure exceeds a certain arbitrary threshold established in a database

13    maintained by the actuarial firm Milliman, Inc. (the "Milliman Database"). If the

14    provider's fee for a specific CPT code is more than $9.99 above the Milliman 80th

15    percentile amount for the same CPT procedure, the computer automatically denies

16    the payment and sets the reimbursement amount at the 80th percentile amount. The

17    computer then creates an Explanation of Reimbursement ("EOR") form which AIS

18    sends to the USAA insured identifying the reason for the reduced payments as an

19    "RF," *viz.,* "Reasonable Fee," reason code, and advising the insured that "[t]he

20    charge exceeded a reasonable amount for the service provided." USAA does not

21    conduct any independent or individualized review to assess whether the charge is a

22    reasonable and necessary medical expense.

23    78.    The Milliman Database used by Defendants to arbitrarily and

24    improperly reduce the payment of MedPay benefits is comprised of an outdated

25    5% nationwide sample of charge data from patients over 65 collected by Medicare,

26    has no bearing on the reasonableness of charges for the medical services provided

27    by USAA's insureds, does not reflect the entire range of fees charged in a

28    geographic area where the medical services are provided, and is comprised of data

CLASS ACTION COMPLAINT

1   not organized by a provider's years of experience, background, or qualifications
2   and credentials, including board certification. Nor does the Milliman Database take
3   into consideration the severity of the accident, the patient's age, or pre-existing
4   conditions.

5       79.    Before Defendants deny payment through AIS's MBA Process and
6   RF code, USAA's adjusters do not investigate the provider's charges or determine
7   "the reasonable fee" for that provider's services. AIS's computer drafts the EOR
8   relying exclusively on the 80th percentile of the Milliman Database. AIS does not
9   communicate with the patient, insured or treating provider. And AIS makes these
10  computer generated determinations and calculations without knowledge of the
11  insured's health treatment plan in place. Instead, USAA simply rubber stamps the
12  AIS calculation, and sends the provider a reduced check, along with the deceptive
13  EOR stating that the denial or reduction is based on an "RF Reason Code," and
14  falsely asserting that the amount billed "exceeds a reasonable amount for the
15  service provided."

16      80.    When Defendants reduce payment based on an RF code it is making
17  no determination that the amount billed is in fact "unreasonable." Instead, USAA's
18  choice of the 80th percentile of billed charges for each procedure in each Medicare
19  defined geographic area is arbitrary.

20      81.    On information and belief, USAA adjusters do not override the RF
21  codes assigned by AIS through its MBA system, and they have no basis to
22  legitimately determine what the "reasonable amount" is for medical bills.

23      82.    As a result of Defendants' improper reduction of MedPay
24  reimbursements based on RF codes, insureds, among other things, are balance-
25  billed by their healthcare providers, become the subject of collection actions by the
26  providers seeking payment of the amounts that USAA refuses to pay, and/or
27  remain under the threat of such actions.

28

SHERNOFF BIDART
ECHEVERRIA LLP
LAWYERS FOR INSURANCE POLICYHOLDERS

83.    On information and belief, Defendants are aware that USAA insureds
are balance billed as a result of RF and PPO codes, but continue to reduce bills
using these codes. Moreover, USAA improperly considers balance billing a
"disputed amount" even though the amount is not actually in dispute. and even
though the unpaid amount becomes a debt owed by their insureds who could face
collection action and harm to their credit for any unpaid amounts.

**H.    USAA Entered into a Stipulation and Consent Order with the
State of Vermont Agreeing to, *Inter Alia*, Discontinue Its Use of
Physician Review Letters.**

84.    USAA's use of medical reviews by AIS engaged physicians to deny
MedPay claims was one of the subjects of the market conduct examination
("MCE") conducted by the Insurance Division of the Vermont Department of
Financial Regulation ("Department") resulting in the entry of a Stipulation and
Consent Order on May 18, 2018, in *In The Matter Of: United Services Automobile
Association (USAA) (NAIC #25941); UNITED SERVICES AUTOMOBILE
ASSOCIATION, USAA CASUALTY INSURANCE COMPANY, (NAIC #25968);
USAA General Indemnity Company (NAIC #18600); Garrison Property and
Casualty Insurance Company (NAIC #21253)*, Docket No. 17-010- I ("Vermont
Consent Order").

85.    In the Vermont Consent Order, the Department found that USAA
engaged in unfair and deceptive acts and practices by, *inter alia,* "accepting the
initial payment recommendations made by its third-party vendor [AIS] with a lack
of documentation describing adjusting activities by the adjuster," "potentially
creating balance billing problems for the claimant by reducing the amount of an
auto medical bill by determining what constitutes a 'reasonable fee' and only
paying that amount," "[a]ccepting the third-party vendor's [AIS] determination
regarding medical necessity without questioning the claimant or the provider;" and
"[d]enying coverage without conducting a reasonable investigation." Examples

CLASS ACTION COMPLAINT

1  include: "a. Accepting the third-party vendor's determination regarding medical

2  necessity without questioning the claimant or the provider; and b. Denying

3  coverage without conducting a reasonable investigation." Vermont Consent Order

4  at 2-3.

5      86.    In the Vermont Consent Order, USAA, among other things, agreed

6  that it "no longer review claims for medical necessity and have discontinued the

7  use of physician review letters." *Id.* at 5-6.

8      87.    Additionally, USAA agreed to "adopt and implement reasonable

9  standards for the prompt investigation of claims arising under insurance policies,"

10  including "guidelines and training material which emphasize the requirement to

11  conduct a reasonable investigation prior to making a determination." *Id.*, ¶ 22.

12      88.    USAA acknowledged "that [the Vermont Consent Order] constitutes a

13  finding by the Commissioner that [USAA has] violated the provisions of Vermont

14  law set forth above and agree not to contest such findings." *Id.*, ¶ 18.

15  **I.    After the Vermont Consent Order, USAA Improperly Continues**

16      **to Use AIS to Adjust USAA Claims Nationwide, Including in**

17      **California**

18      89.    On information and belief, AIS, pursuant to its contract with USAA-

19  Association, uses its systems designed to systematically, wrongfully, and

20  arbitrarily deny USAA's insureds' MedPay benefits owed under their USAA

21  insurance policies nationwide, with the possible exception of Vermont (in view of

22  the Vermont Consent Order).

23      90.    Although USAA, under the Vermont Consent Order, agreed to cease

24  engaging in these practices in Vermont, it nevertheless continues to engage in these

25  practices in other states, including California, unless ordered to cease engaging in

26  such conduct.

27

28



CLASS ACTION COMPLAINT

91.    AIS's corporate designee has described AIS's "standard workflow diagram," which is the process employed by AIS nationwide on behalf of USAA when generating an EOR, as evidenced in a reply brief published in Westlaw:

Q. I really don't want to rehash this, but you were talking about how medical bills come in and they are processed and then you talked about indexing. You kept talking about all these steps about how a claim eventually results in an EOR, right?

A. [Tina Senftle – AIS's corporate designee]. Yes.

Q. What would you describe that process?

A. **That's a workflow diagram.**

Q. Workflow diagram. Is there a workflow diagram that shows how USAA's Medpay claims are processed by the AIS software?

A. Specific to Montana?

Q. Yes.

A. No.

Q. The next question is going to be, is there one that is more general to the United States as a whole?

A. I mean, there is a diagram that shows the workflow, yes.

Q. What is that document called, "workflow diagram"?

A. I don't know that it has a name, but yeah.

Q. The diagram that you reference, does the workflow diagram apply to claims processed in Montana?

A. **It would be a standard workflow.[5]**

92.    USAA knows that its computer-based billing scheme is harming its insureds – mostly consisting of U.S. military veterans and their families – both



---

[5] Reply Brief in Support of Plaintiffs' Third Motion to Compel, *Byorth v. USAA Cas. Ins. Co.*, No. 20CV00076, 2019 WL 9851641, at *5-6 (D. Mont. Mar. 8, 2019) (emphasis in original).

CLASS ACTION COMPLAINT

1  financially and physically. Yet USAA will only cease engaging in its billing

2  scheme until ordered to do so on a state-by-state basis as evidenced by USAA

3  continuing to engage in its billing scheme even after it, and its affiliated

4  companies, entered into the Vermont Consent Order:

5      93.    In its Rule 30(b)(6) deposition addressing, *inter alia*, the Vermont

6  Consent Order and USAA's conduct thereafter in this matter, USAA testified

7  generally that even though Montana's UTPA is essentially the same as Vermont's,

8  it gave no consideration to changing its business practices in Montana in a similar

9  fashion. Plaintiff's expert, Dave Bauer, has opined "given my 20 years as in- house

10  counsel for a major insurance company, I find it suspect that USAA upper

11  management has not discussed the Vermont Order in detail and whether it should

12  review its practices in Montana and all other states where it does business."[6]

13      **J.    USAA-CIC and AIS, through AIS's MBA Process, Unlawfully**

14          **Denied or Reduced Reimbursement for Plaintiff's MedPay**

15          **Claims.**

16      94.    Plaintiff Denise Stott was injured in an automobile accident on

17  January 21, 2020, while insured by USAA. Specifically, Plaintiff had MedPay

18  coverage through USAA-CIC.

19      95.    Plaintiff sought and received medical treatment for injuries she

20  suffered in this accident. The medical treatment Plaintiff received was causally

21  related to her injuries and was reasonable and necessary.

22      96.    More specifically, Plaintiff sought and received medical treatment for

23  injuries she suffered in the January 21, 2020 automobile accident, and USAA-CIC

24  either unlawfully reduced or denied reimbursement for this medical care.

25

26

27  [6] Brief in Opposition to USAA's Motion in Limine to Exclude Vermont Stipulation and Consent Order, *McKean v. USAA Cas. Ins. Co.*, No. 20-76-BLG-KLD, 2020 WL 4783602 (D. Mont. July

28  27, 2020).

CLASS ACTION COMPLAINT

SHERNOFF BIDART ECHEVERRIA LLP

LAWYERS FOR INSURANCE POLICYHOLDERS

97.    Plaintiff received medical care, including, but not limited to, ambulance, hospital care, surgeries, orthopedic care, and diagnostic testing in connection with her injuries sustained in the January 21, 2020 automobile accident.

98.    In the EORs AIS provided to Plaintiff, USAA-CIC substantially reduced or denied reimbursement of the charged amounts on several bases including: (1) PPO ("This service provider participates in a PPO network and has agreed to accept as payment in full the reimbursement amount listed in this line for the service listed, and also has agreed not to seek any additional payment from the patient. If you are the service provider, and you do not agree that this service is subject to such an agreement, or you have any other question about this issue, please contact Customer Service."); (2) RF_4 ("The charge exceeds a reasonable amount for the service provided. If you do not accept the recommended amount stated on this EOR as payment in full for this line item, please submit further documentation or explanation to support the reasonableness of the charge submitted by you for payment."); (3) IR105 ("The medical bill submitted does not include the name of the person rendering service. Please resubmit your bill with the service provider along with any medical records for each date of service and attach this request form."); (4) DOC55 ("In order to make a reimbursement decision, documentation is needed to support the medical necessity for continued care or treatment; and (5) GR84 ("Box 10, question B of the CMS1500 form indicates the medical treatment rendered is not related to an auto accident. Should this be an error, submit a corrected bill and include medical records for verification for the dates of service billed. Otherwise, services not related to an auto accident are not reimbursable.").

## V.    CLASS ALLEGATIONS

99.    Plaintiff brings this action pursuant to Rule 23 of the Federal Rules of Civil Procedure.

100.    The proposed class consists of:

CLASS ACTION COMPLAINT

All persons (1) who were insured under the MedPay coverage of a California automobile insurance policy issued by USAA; (2) who received medical, health care, or rehabilitation services, or medication or equipment, from a health care provider; (3) who made a claim under the MedPay coverage of that policy; (4) who submitted (or whose health care provider submitted) to USAA a bill for such services or products; and (5) who had that bill reduced or denied by a PPO code; or Physician Review (or PR code); or DOC code; or RF code; IR Code; or GR code (the "Class").

101.    Excludes from the Class are Defendants' officers, directors, affiliates, legal representatives, employees, successors, subsidiaries, and assigns. Also excluded from the Class are any judge, justice, or judicial officer presiding over this matter and the members of their immediate families and judicial staff.

102.    The time period for the Class is the number of years immediately preceding the date on which this Complaint was filed as allowed by the applicable statute of limitations, going forward into the future until such time as Defendants remedy the conduct complained of herein.

103.    **Numerosity**: The Class is estimated to include thousands of USAA California insureds. Specifically, during the class period, more than 1,000 California insureds submitted reasonable and necessary medical expense bills for payment under a USAA MedPay policy and had their payments improperly denied or reduced based on RF, PR, DOC, IR, PPO, and GR reason codes. The putative Class consists of residents of multiple counties in California and is geographically diverse. Thus, the size and geographical location of the Class renders individual joinder of all members impracticable. While the exact numbers of the members of the Class are unknown to Plaintiff at this time, membership in the Class may be ascertained from the records maintained by Defendants.

104.    **Commonality**: The Class's claim arises from a common process and common practices used by Defendants in adjusting and reducing or denying MedPay claims. The common process includes the use of AIS's MBA process to

perform an automated computerized bill review that includes common practices in denying or reducing charges based on certain preset flags, codes, criteria, and limitations, bogus medical reviews, and no adjusting of MedPay claims by USAA adjusters. Among these common practices are denials and reductions that are based on certain reason codes that appear on the EOR(s) AIS sent to the insured and providers. The common questions of fact and law include:

a.    Whether USAA entered into agreements to provide MedPay coverage and therein gave itself discretion to pay its California insureds any amount it wanted.

b.    Whether Defendants conspired to commit fraud by deceit, and to violate California Insurance Code § 781 and/or the California Business Practices Act.

c.    Whether USAA improperly delegates its duty to conduct an independent evaluation and adjustment of claims to AIS, without USAA conducting any adjusting of MedPay claims.

d.    Whether Defendants arbitrarily reduce MedPay benefits through the improper use of PPO codes.

e.    Whether Defendants arbitrarily reduce MedPay benefits through the improper use of RF codes.

f.    Whether Defendants arbitrarily reduce MedPay benefits through the improper use of bogus physician reviews.

g.    Whether Defendants arbitrarily reduce MedPay benefits through the improper use of DOC codes.

h.    Whether Defendants arbitrarily reduce MedPay benefits through the improper use of GR codes.

i.    Whether Defendants arbitrarily reduce MedPay benefits through the improper use of IR codes.

CLASS ACTION COMPLAINT

1    j.    Whether Defendants' complained of practices violate USAA's

2  insurance contracts with their California insureds.

3    k.    Whether Defendants' denials and reductions of MedPay claims

4  are based on their use of AIS's MBA process which uses an arbitrary automated,

5  computer-generated review.

6    l.    Whether USAA has a practice of relying solely on AIS to make

7  denials and reductions of MedPay claims without conducting their own

8  independent investigation or individualized investigation based on all "available"

9  information including, for example, the severity of the accident, the age and

10  preexisting condition of the patient, the provider's background, years of

11  experience, credentials or other individual attributes.

12    105.  **Typicality**: The claims of the individual Plaintiff arise from the same

13  common practices and scheme used by Defendants to process the claims of the

14  members of the Class. In each instance, USAA used AIS to perform an automated,

15  computer-generated bill review that resulted in improper denials or reductions in

16  payment of charges submitted pursuant to MedPay claims. The same criteria

17  applied by AIS in processing the charges submitted by Plaintiff on her MedPay

18  claims were applied to the charges submitted by all Class members. Plaintiff's

19  claims are based upon the same factual and legal theories as those of the Class. All

20  Class members will benefit by the action brought by Plaintiff by obtaining relief in

21  the manner described below, including, but not limited to, damages and/or

22  declaratory and injunctive relief.

23    106.  **Predominance**: Common questions predominate because Defendants

24  undertook a common course of conduct towards all members of the Class and

25  applied their practices and scheme at issue to all bills submitted under USAA

26  MedPay coverage during the class period.

27    107.  **Superiority**: Class certification is proper where a class action is a

28  superior method for adjudicating the claims of thousands of Class members located

CLASS ACTION COMPLAINT

SHERNOFF BIDART ECHEVERRIA LLP
LAWYERS FOR INSURANCE POLICYHOLDERS

1   in California that raise identical factual and legal issues concerning Defendants'

2   MedPay processing and payment practices scheme. Class certification is a superior

3   method of adjudicating the claims alleged herein where it is desirable to

4   concentrate the litigation and claims in a single forum to avoid duplicity of actions

5   and inconsistent adjudications of identical claims.

6      108.   Class certification is a superior method of adjudicating the claims

7   alleged herein where the individual Class members have little interest in, or time to

8   devote to, individually controlling the prosecution of their claims.

9      109.   Class certification is a superior method of adjudicating the claims

10   alleged herein where it is desirable to concentrate the litigation and claims in a

11   single forum to avoid duplicity of actions and inconsistent adjudications of

12   identical claims. The cost to the court system of the various counties where Class

13   members are located would be substantial if the claims were adjudicated

14   individually.

15      110.   Class certification is a superior method of adjudicating the claims

16   alleged herein because there are few difficulties likely to be encountered in the

17   adjudication of the Class members' claims. Other, similar class actions based on

18   the same factual and legal issues have been certified throughout the United States.

19      111.   **Adequacy of Representation**: Plaintiff is a USAA insured who had

20   payment of charges submitted on MedPay claims denied or reduced because of

21   Defendants' improper practices described above. Plaintiff has the same interest as

22   members of the Class in ensuring that Defendants do not use improper processes

23   and practices to deny or reduce MedPay claims. Plaintiff has no conflicts with the

24   interests of the Class. Plaintiff has retained competent counsel with experience

25   litigating consumer class actions, as well as breach of contract, and other insurance

26   claims. Plaintiff and her chosen counsel will fairly and adequately protect the

27   interests of the Class.

28

CLASS ACTION COMPLAINT

**FIRST CLAIM FOR RELIEF**

**Breach of Contract, Including Breach of the Covenant of Good Faith and Fair Dealing Against USAA**

**(On Behalf of Plaintiff and the Class)**

112.   Plaintiff hereby repeats, realleges, and incorporates by reference each and every allegation contained above as though the same were fully set forth herein.

113.   Plaintiff and other Class members entered into written insurance contracts with USAA that provided for MedPay benefits.

114.   Pursuant to the contracts, in exchange for insureds' premium payments, USAA implied and covenanted that it would act in good faith and follow the law and the contracts with respect to the prompt and fair payment of MedPay benefits to Plaintiff and Class Members.

115.   USAA breached its insurance agreement with Plaintiff and Class members by, among other things:

a.    Improperly delegating its claims adjustment function to AIS which uses its MBA process to arbitrarily and improperly deny or reduce MedPay claims;

b.    Improperly reducing MedPay claim payments based on an EOR stating that "[t]his service provider participates in a PPO network and has agreed to accept as payment in full the reimbursement amount listed in this line for the service listed, and also has agreed not to seek any additional payment from the patient," while at the same time, USAA had not entered into PPO or PPN agreements with providers;

c.    Improperly reducing MedPay claim payments based on an EOR attaching a letter written by a physician (i) engaged by AIS; (ii) who is not licensed in the relevant state; (iii) who does not specialize in the area under review; (iv) who conducts only a paper review; (v) who does not physically examine the patient

CLASS ACTION COMPLAINT

1  or speak with the patient; and (vi) who has never spoken with the insureds'

2  provider regarding the reasonableness or necessity for the medical service, stating

3  that the submitted documentation does not substantiate that the treatment provided

4  is medically necessary and/or related to the loss, and without any independent

5  investigation by USAA;

6      d.    Improperly denying full payment of MedPay claims based on

7  DOC codes whereby USAA directs AIS to program its computer to deny payment

8  of medical bills covered under MedPay claims if certain documents are not

9  attached to the bills, even though the documentation is not needed to substantiate

10 the necessity of the billed treatments, and without USAA conducting any

11 independent investigation, but instead relying only on AIS's arbitrary automated

12 MBA process;

13     e.    Improperly denying full payment of MedPay claims by

14 improperly delegating its duty to evaluate and adjust MedPay claims to AIS which

15 used an arbitrary automated review process. This includes using arbitrary and

16 automated reason codes, including, *inter alia*, DOC, RF, IR, PR, and GR codes,

17 without USAA conducting an independent investigation; and

18     f.    Improperly denying full payment of MedPay claims based on

19 GR codes whereby USAA directs AIS to program its computer to deny payment of

20 medical bills covered under MedPay claims based on automatic bill processing

21 through its computer based on relation to a motor vehicle collision, without USAA

22 conducting any independent investigation, but instead relying only on AIS's

23 arbitrary automated MBA process.

24     116.   USAA's practices as described herein violated its duties to Plaintiff

25 and Class members under the insurance contracts and California law.

26     117.   USAA's practices as described herein constitute an unreasonable

27 denial to pay benefits due to Plaintiff and Class members in breach of the implied

28 covenant of good faith and fair dealing arising from USAA's insurance contracts.

CLASS ACTION COMPLAINT

118.   USAA's wrongful reduction of MedPay benefits damaged Plaintiff
and Class members.

### SECOND CLAIM FOR RELIEF

**Violation of Business and Professions Code § 17200**

**Against all Defendants**

**(On Behalf of Plaintiff and the Class)**

119.   Plaintiff hereby repeats, realleges, and incorporates by reference each
and every allegation contained above as though the same were fully set forth
herein.

120.   Plaintiff brings this claim for violation of California Business and
Profession Code § 17200 on behalf of themselves and the Class members.

121.   California Business and Professions Code § 17200 (the "Unfair
Competition Law") prohibits acts of "unfair competition" including any "unlawful,
unfair or fraudulent business act or practice."

122.   USAA-CIC's practice of denying medical charges based on causation
and necessity through sham physician reviews, and denying and reducing claims
through AIS's arbitrary MBA process without independent review is an unfair
business practice proscribed by §17200. There is no reasonable basis for these
denials and reductions. USAA-CIC's practice and scheme is substantially injurious
to consumers and has allowed USAA-CIC to be unjustly enriched at the
consumers' expense.

123.   This substantial injury is not outweighed by any countervailing
benefits to consumers or competition.

124.   USAA-CIC violated the Unfair Competition Law by violating
California Insurance Code § 790.03(h).

125.   USAA-CIC violated the Unfair Competition Law by violating
California Insurance Code § 781.

CLASS ACTION COMPLAINT

SHERNOFF BIDART
ECHEVERRIA LLP
LAWYERS FOR INSURANCE POLICYHOLDERS

126. USAA-CIC violated the Unfair Competition Law when it failed to implement reasonable standards for the prompt investigation and processing of claims arising under its MedPay policies for Plaintiff and Class members.

127. USAA-CIC violated the Unfair Competition Law when it did not attempt in good faith to effectuate prompt, fair and equitable settlements of claims for Plaintiff and Class members.

128. USAA-CIC violated the Unfair Competition Law when it attempted to settle claims for Plaintiff and Class members for less than the amount to which a reasonable person would have believed he or she was entitled by reference to written or printed advertising material accompanying or made part of an application.

129. USAA-CIC's actions violate the unlawful prong of § 17200 because they violate California's express statutory and regulatory requirements regarding insurance, including California Insurance Code § 790.03(h) and California Insurance Code § 781.

130. USAA-CIC's  actions violate the unfair prong of § 17200 because the acts and practices set forth above, including USAA-CIC's use of automated computer processing to deny claims, delegation of adjustment duties to AIS, use of non-existing PPO agreements, delay of payment based on unnecessary documents, and automated denial based on medical necessity or causation, offend established public policy, and because the harm they cause to consumers greatly outweighs any benefits associated with those practices. USAA-CIC's actions also violate the unfair prong because they constitute a systematic breach of consumer contracts.

131. USAA-CIC has violated the fraudulent business practices prong of § 17200 because the misrepresentations and omissions regarding the MedPay insurance policies and Plaintiff's rights under the policy, including the denial of claims on sham pretenses, were likely to deceive a reasonable consumer, and the information would be material to a reasonable consumer.

CLASS ACTION COMPLAINT

132.    As a direct and proximate result of USAA-CIC's violation of § 17200, Plaintiff and Class members have been injured in fact and suffered lost money or property in that USAA-CIC failed to provide benefits owed to their insureds under the insurance policies USAA-CIC issued.

133.    To date, USAA-CIC continues to violate the Unfair Competition law by breaching its insurance contracts.

134.    To date, Plaintiff and Class members are still insured by USAA-CIC.

135.    Plaintiff and Class members are realistically threatened by USAA-CIC's future repetition of the violations of the California Insurance Code § 790.03(h) and California Insurance Code § 781.

136.    Pursuant to § 17203 of the Unfair Competition Law, Plaintiff and Class members seek prospective and injunctive relief, including an order enjoining USAA-CIC from denying or reducing benefits owed to USAA-CIC insureds through its scheme involving AIS's MBA process and sham medical reviews. Without such an order, there is a continuing threat to Plaintiff and the Class members, as well as to members of the general public, that USAA-CIC will continue to deny and reduce benefits to California consumers.

137.    In the alternative to all legal remedies sought herein, Plaintiff alleges that unless such Class-wide injunctive relief is issued, Plaintiff and Class Members remain at risk, other legal remedies are inadequate, and there is no other adequate remedy at law that would ensure that Plaintiff (and other consumers) can rely on Defendants' representations that it has ended its scheme to deny or reduce the payment of MedPay benefits. Plaintiff's breach of contract and other legal remedies may ultimately be inadequate for the Class because the damages arising from the deceptive practices of all defendants may prove too difficult to quantify given the different practices employed to different Class members

CLASS ACTION COMPLAINT

138.   USAA-CIC's scheme is especially harmful to the general public because MedPay coverage extends not only to the named insureds, but to others who drive vehicles insured by USAA-CIC through permissive use.

139.   Further pled in the alternative, Plaintiff and the class have a partial but incomplete and inadequate remedy at law.  Unless the acts and conduct of Defendants are restrained and enjoined by this Court, Defendants will continue to engage in the conduct in question harmful to the Plaintiff and the class and the resulting harm and damages to Plaintiff and the class will be substantial, continuing, and irreparable.

140.   Furthermore, in the alternative to all legal remedies sought herein, Plaintiff, on behalf of the Class, seeks monetary relief under Cal. Bus. & Prof. Code § 17200, et seq., including but not limited to restitution to Plaintiff and Class Members of money or property that Defendants may have acquired by means of Defendants' unlawful, and unfair business practices; restitutionary disgorgement of all profits accruing to Defendants because of Defendants' unlawful and unfair business practices; declaratory relief; and attorneys' fees and costs pursuant to Cal. Code Civ. Proc. § 1021.5.

141.   Defendants engaged in a conspiracy to violate the Unfair Competition Law, by implementing a multifaceted, improper, and unconscionable scheme to deny and reduce the payment of MedPay benefits. In furtherance of their scheme to deny and reduce the payment of MedPay benefits, USAA-Association contracted with AIS, a third-party, to reduce and deny reimbursement of USAA insureds' MedPay benefits using its MBA process. The MBA process is designed to categorically eliminate or reduce the amount USAA pay for their insureds' health care expenses based upon various codes, including PPO codes, DOC codes, PR codes, IR codes, GR codes, and RF codes.

142.   The conspiracy was fully formed and involved USAA-Association, USAA-CIC, USAA-GIC, Garrison, and AIS. Each Defendant individually were

CLASS ACTION COMPLAINT

1   part of the conspiracy and all Defendants agreed as to the purpose of the

2   conspiracy, which was to implement a multifaceted, improper, and unconscionable

3   scheme to deny and reduce the payment of MedPay benefits. The improper

4   reductions and denials USAA insureds' MedPay benefits in furtherance of this

5   conspiracy were done pursuant to the contract between USAA-Association and

6   AIS, which sets forth how AIS reduces and denies these benefits.

7       143.   Each Defendant was aware of the other Defendants' roles in the

8   conspiracy.

9       144.   Each Defendant agreed among themselves and intended that the

10  violation of the Unfair Competition Law was perpetrated on Plaintiff and USAA

11  insureds who comprise the putative class members.

12      145.   Each Defendant had contracts and/or on-going cooperative

13  relationships with at least one of the other co-conspirators responsible for the harm

14  suffered by Plaintiff and putative class members.

15      146.   Significant wrongful conduct was committed in furtherance of the

16  conspiracy, including the making of material fraudulent misrepresentations, and

17  omitting material information that induced Plaintiff to pay insurance premiums for

18  MedPay policies, namely concealing its multifaceted scheme designed and

19  implemented to avoid paying its insureds' MedPay benefits in accordance with

20  USAA's representations made in its MedPay policies.

21      147.   Each Defendant committed at least one overt act in furtherance of the

22  conspiracy. These acts in furtherance of the conspiracy included, among others:

23          a.   Defendant USAA-Association, on behalf of itself and its

24  subsidiaries USAA-CIC, USAA-GIC and Garrison, made an overt act in

25  furtherance of the conspiracy by contracting with AIS on behalf of itself and all

26  other USAA entities for the express purpose of exercising the conspiracy.

27          b.   Defendants also made substantial overt acts in furtherance of

28  the conspiracy by using, as more fully detailed in the general allegations supra,

CLASS ACTION COMPLAINT

SHERNOFF BIDART
ECHEVERRIA LLP
LAWYERS FOR INSURANCE POLICYHOLDERS

1    AIS's MBA System to arbitrarily and unlawfully reduce and deny Defendants'

2    insureds' Medpay claims using, inter alia, the following codes:

3              i.    Defendants reduced MedPay claim payments based on

4    EORs, sent by AIS to insureds, containing PPO codes stating that "[t]his service

5    provider participates in a PPO network and has agreed to accept as payment in full

6    the reimbursement amount listed in this line for the service listed, and also has

7    agreed not to seek any additional payment from the patient," while at the same

8    time, USAA had not entered into direct PPO agreements with providers;

9              ii.    Defendants denied MedPay claim payments based on PR

10    codes contained in EORs, sent by AIS to insureds, attaching a letter written by a

11    physician (i) engaged by AIS; (ii) who conducts only a paper review; (iii) who

12    does not physically examine the patient or speak with the patient; and (iv) who has

13    never spoken with the insureds' provider regarding the reasonableness or necessity

14    for the medical service, stating that the submitted documentation does not

15    substantiate that the treatment provided is medically necessary and/or related to the

16    loss, and without any independent investigation by USAA.

17              iii.    Defendants reduced full payment of MedPay claims in

18    EORs, sent by AIS to insureds, containing RF codes which arbitrarily reduce

19    provider charges using a database containing unrelated Medicare charges

20    associated with CPTs; and

21              iv.    Defendants denied full payment of MedPay claims in

22    EORs, sent by AIS to insureds, containing DOC codes which request unnecessary

23    provider documents relating to treatment.

24              v.    Defendants denied full payment of MedPay claims in

25    EORs, sent by AIS to insureds, containing IR codes which request unnecessary

26    provider information relating to treatment.

27              vi.    Defendants improperly denied full payment of MedPay

28    claims based on GR codes whereby USAA directs AIS to program its computer to

CLASS ACTION COMPLAINT

1  deny payment of medical bills covered under MedPay claims based on automatic

2  bill processing through its computer based on relation to a motor vehicle collision,

3  without USAA conducting any independent investigation, but instead relying only

4  on AIS's arbitrary automated MBA process.

5       148.   As a direct and proximate result of Defendants' conspiracy to violate

6  of § 17200, Plaintiff and Class members have been injured in fact and suffered lost

7  money or property in that USAA failed to provide benefits owed to their insureds

8  under the insurance policies USAA issued.

9       149.   To date, Defendants continues to conspire to violate the Unfair

10  Competition law by breaching its insurance contracts.

11       150.   Plaintiff and Class members are realistically threatened by Defendants

12  future repetition of their conspiracy to violate California Insurance Code §

13  790.03(h) and California Insurance Code § 781.

14       151.   Pursuant to § 17203 of the Unfair Competition Law, Plaintiff and

15  Class members, are seeking an order enjoining USAA from using AIS and its

16  MBA system to deny or reduce benefits owed to USAA insureds. Without such an

17  order, there is a continuing threat to Plaintiff and the Class members, as well as to

18  members of the general public, that USAA and AIS will continue their conspiracy

19  to deny and reduce benefits to California consumers.

20  **THIRD CLAIM FOR RELIEF**

21  **Fraud by Deceit, Cal. Civ. Code §§ 1709 & 1710**

22  **Against All Defendants**

23  **(On Behalf of Plaintiff and the Class)**

24       152.   Plaintiff hereby repeats, realleges, and incorporates by reference each

25  and every allegation contained above as though the same were fully set forth

26  herein.

27

28

CLASS ACTION COMPLAINT

SHERNOFF BIDART ECHEVERRIA LLP
LAWYERS FOR INSURANCE POLICYHOLDERS

153.   Under California law, fraudulent deceit includes "[t]he suggestion, as a fact, of that which is not true, by one who does not believe it to be true." Cal. Civ. Code § 1710(1).

154.   Under California law, fraudulent deceit includes "[t]he suppression of a fact, by one who is bound to disclose it, or who gives information of other facts which are likely to mislead for want of communication of that fact." Cal. Civ. Code § 1710(3).

155.   Under California law, fraudulent deceit includes "[a] promise, made without any intention of performing it." Cal. Civ. Code § 1710(4).

156.   148.  USAA-CIC made a fraudulent or reckless representation of facts as true (*e.g.* that it would pay in accordance with its MedPay policies), when it knew it had a fraudulent cost containment scheme in place that was designed to enrich USAA-CIC and AIS to the detriment of its insureds. USAA-CIC intended to deceive Plaintiff and the putative class, and also made such representations knowingly.

157.   Moreover, USAA-CIC concealed from its insureds that it would rely on AIS's MBA process to arbitrarily and unlawfully reduce and deny their MedPay claims using sham codes. USAA- CIC concealed from its insureds that it would subject its insureds MedPay claims to AIS's MBA process's algorithms intentionally designed to deny and reduce claim reimbursement. Moreover, USAA-CIC also concealed from its insureds that it would use arbitrary benchmarks to determine what costs for medical care were "reasonable."

158.   USAA-CIC has committed fraudulent deceit under Cal. Civ. Code § 1710 because USAA-CIC failed to disclose to its insureds under its MedPay policies that USAA-CIC had implemented a multifaceted, improper, and unconscionable scheme to deny and reduce the payment of MedPay benefits. In furtherance of its scheme to deny or reduce the payment of MedPay benefits, USAA contracted with AIS, a third-party, to reduce or deny reimbursement of

CLASS ACTION COMPLAINT

SHERNOFF BIDART ECHEVERRIA LLP
LAWYERS FOR INSURANCE POLICYHOLDERS

1   USAA-CIC's insureds' MedPay benefits using its MBA process. The MBA

2   process is designed to categorically eliminate or reduce the amount USAA-CIC

3   pays for its insureds' health care expenses based upon various codes, including

4   PPO codes, DOC codes, PR codes, GR codes, IR codes, and RF codes.

5       159.   USAA-CIC had a duty to disclose its multifaceted, improper, and

6   unconscionable scheme to deny and reduce the payment of MedPay benefits

7   because USAA-CIC affirmatively represented to its insureds in its MedPay

8   policies that it would pay provider fees in accordance with the MedPay policies.

9       160.   Specifically, in its MedPay policies, USAA-CIC represented that it

10  would pay its California insureds' covered MedPay benefits as follows:

11          a.    "[t]he amount provided by an applicable agreement with a

12  Preferred Provider Organization, Preferred Provider Network, or other similar

13  agreement";

14          b.    "[t]he amount required, approved, or allowed by a fee schedule

15  established by a state, federal, or other governmental entity in the relevant

16  geographic area";

17          c.    "[t]he amount negotiated with the provider; or"

18          d.    the lesser of "[t]he actual amount billed" or "[a] reasonable fee

19  for the service provided."

20      161.   USAA-CIC intentionally concealed and omitted material information

21  regarding the payments it would make under its insureds' MedPay policies. The

22  foregoing multifaceted scheme, which USAA-CIC failed to disclose to its insureds

23  at the time they entered into the MedPay policies, is directly contrary to USAA-

24  CIC's representations in the MedPay policies regarding the payment of provider

25  fees in connection with USAA-CIC's insureds' MedPay claims.

26      162.   Had Plaintiff and the putative class been aware of USAA-CIC's

27  multifaceted scheme to deny or reduce their MedPay benefits, they would not have

28  paid premiums to USAA-CIC to obtain the MedPay policies from USAA-CIC.

CLASS ACTION COMPLAINT

SHERNOFF BIDART
ECHEVERRIA LLP
LAWYERS FOR INSURANCE POLICYHOLDERS

163.   Plaintiff and the putative class suffered injury as a direct result of
USAA-CIC's deceit. Specifically, Plaintiff and the putative class had their MedPay
benefits improperly reduced or denied by USAA-CIC's multifaceted scheme.

164.   Defendants and AIS (who is not a subsidiary of USAA, and who is an
independent third party) engaged in a conspiracy to commit fraud by deceit, in
violation of Cal. Civ. Code § 1710(1), (3) and (4), by implementing a multifaceted,
improper, and unconscionable scheme to deny and reduce the payment of MedPay
benefits. In furtherance of its scheme to deny and reduce the payment of MedPay
benefits, USAA-Association contracted with AIS, a third-party, to reduce and deny
reimbursement of USAA insureds' MedPay benefits using its MBA process. The
MBA process is designed to categorically eliminate or reduce the amount USAA
pays for their insureds' health care expenses based upon various codes, including
PPO codes, DOC codes, PR codes, GR codes, IR codes, and RF codes.

165.   The conspiracy was fully formed and involved USAA-Association,
USAA-CIC, USAA-GIC, Garrison, and AIS. Each Defendant and AIS individually
were part of the conspiracy and all Defendants and AIS agreed as to the purpose of
the conspiracy, which was to implement a multifaceted, improper, and
unconscionable scheme to deny and reduce the payment of MedPay benefits. The
improper reductions and denials USAA insureds' MedPay benefits in furtherance
of this conspiracy were done pursuant to the contract between USAA-Association
and AIS, which sets forth how AIS reduces and denies these benefits.

166.   Each Defendant was aware of the other Defendants' roles in the
conspiracy.

167.   Each Defendant agreed among themselves and intended that the fraud
by deceit was perpetrated on Plaintiff and USAA insureds who comprise the
putative class members.

CLASS ACTION COMPLAINT

168.   Each Defendant had contracts and/or on-going cooperative relationships with at least one of the other co-conspirators responsible for the harm suffered by Plaintiff and putative class members.

169.   Significant wrongful conduct was committed in furtherance of the conspiracy, including the making of material fraudulent misrepresentations, and omitting material information that induced Plaintiff to pay insurance premiums for MedPay policies, namely concealing its multifaceted scheme designed and implemented to avoid paying its insureds' MedPay benefits in accordance with USAA's representations made in its MedPay policies.

170.   Each Defendant committed at least one overt act in furtherance of the conspiracy. These acts in furtherance of the conspiracy included, among others:

a.   Defendant USAA-Association, on behalf of itself and its subsidiaries USAA-CIC, USAA-GIC and Garrison, made an overt act in furtherance of the conspiracy by contracting with AIS on behalf of itself and all other USAA entities for the express purpose of exercising the conspiracy.

b.   Defendants also made substantial overt acts in furtherance of the conspiracy by using, as more fully detailed in the general allegations supra, AIS's MBA System to arbitrarily and unlawfully reduce and deny Defendants' insureds' Medpay claims using, inter alia, the following codes:

i.   Defendants reduced MedPay claim payments based on EORs, sent by AIS to insureds, containing PPO codes stating that "[t]his service provider participates in a PPO network and has agreed to accept as payment in full the reimbursement amount listed in this line for the service listed, and also has agreed not to seek any additional payment from the patient," while at the same time, USAA had not entered into direct PPO agreements with providers;

ii.   Defendants denied MedPay claim payments based on PR codes contained in EORs, sent by AIS to insureds, attaching a letter written by a physician (i) engaged by AIS; (ii) who conducts only a paper review; (iii) who

CLASS ACTION COMPLAINT

SHERNOFF BIDART
ECHEVERRIA LLP
LAWYERS FOR INSURANCE POLICYHOLDERS

1  does not physically examine the patient or speak with the patient; and (iv) who has

2  never spoken with the insureds' provider regarding the reasonableness or necessity

3  for the medical service, stating that the submitted documentation does not

4  substantiate that the treatment provided is medically necessary and/or related to the

5  loss, and without any independent investigation by USAA.

6         iii.    Defendants reduced full payment of MedPay claims in

7  EORs, sent by AIS to insureds, containing RF codes which arbitrarily reduce

8  provider charges using a database containing unrelated Medicare charges

9  associated with CPTs; and

10        iv.    Defendants denied full payment of MedPay claims in

11 EORs, sent by AIS to insureds, containing DOC codes which request unnecessary

12 provider documents relating to treatment.

13        v.    Defendants denied full payment of MedPay claims in

14 EORs, sent by AIS to insureds, containing IR codes which request unnecessary

15 provider information relating to treatment.

16        vi.    Defendants improperly denied full payment of MedPay

17 claims based on GR codes whereby USAA directs AIS to program its computer to

18 deny payment of medical bills covered under MedPay claims based on automatic

19 bill processing through its computer based on relation to a motor vehicle collision,

20 without USAA conducting any independent investigation, but instead relying only

21 on AIS's arbitrary automated MBA process.

22    171.   As a direct and proximate result of USAA's and AIS's conspiracy and

23 the USAA and AIS acts in furtherance of the conspiracy, as detailed *supra*,

24 Plaintiff and the putative class members have suffered damages.

25

26

27

28

CLASS ACTION COMPLAINT

SHERNOFF BIDART ECHEVERRIA LLP
LAWYERS FOR INSURANCE POLICYHOLDERS

**FOURTH CLAIM FOR RELIEF**

**Violation of Insurance Code § 781**

**Against All Defendants**

**(On Behalf of Plaintiff and the Class)**

172.   Plaintiff hereby repeats, realleges, and incorporates by reference each and every allegation contained above as though the same were fully set forth herein.

173.   California Insurance Code § 781 prohibits "twisting" in the insurance business. California Insurance Code § 781(a) prohibits any statement that is known, or should have been known, to be a misrepresentation to any other person for the purpose of inducing, or tending to induce, such other person to take out a policy of insurance or cause of person to forfeit an existing policy of insurance.

174.   A violation of California Insurance Code § 781 gives rise to a private right of action and is punishable by a fine not exceeding three times the amount of the loss suffered by the victim. *See Kentucky Central Life Ins. Co. v. LeDuc*, 814 F. Supp. 832, 835-37 (N.D. Cal. 1992) ("Supplying a private cause of action [for § 781] will further the policy prohibiting misrepresentation.").

175.   The California Insurance Code provides for "an administrative procedure allowing the Insurance Commissioner to suspend an agent's license or an insurer's certificate of authority for violation of § 781. *See* Ins. Code §§ 782, 783, 783.5. An insurer who knowingly violates California Insurance Code § 781, or who knowingly permits any officer, agent, or employee to do so, is subject to suspension of the insurer's certificate of authority to do the class of insurance with respect to which the violation occurred.

176.   USAA-CIC has violated California Insurance Code § 781(a) by failing to disclose to its insureds that USAA-CIC had implemented a multifaceted, improper, and unconscionable scheme to deny and reduce the payment of MedPay benefits. In furtherance of its scheme to deny or reduce the payment of MedPay

CLASS ACTION COMPLAINT

1 benefits, USAA contracted with AIS, a third-party, to reduce or deny

2 reimbursement of USAA-CIC's insureds' MedPay benefits using its MBA process.

3 The MBA process is designed to categorically eliminate or reduce the amount

4 USAA-CIC pays for its insureds' health care expenses based upon various codes,

5 including PPO codes, DOC codes, PR codes, GR codes and RF codes.

6     177.   Specifically, in its MedPay policies, USAA-CIC represented that it

7 would pay its California insureds' covered MedPay benefits as follows:

8     a.   "[t]he amount provided by an applicable agreement with a

9 Preferred Provider Organization, Preferred Provider Network, or other similar

10 agreement";

11     b.   "[t]he amount required, approved, or allowed by a fee schedule

12 established by a state, federal, or other governmental entity in the relevant

13 geographic area";

14     c.   "[t]he amount negotiated with the provider"; or

15     d.   the lesser of "[t]he actual amount billed" or "[a] reasonable fee

16 for the service provided."

17     178.   Plaintiff and the putative class were induced to purchase MedPay

18 polices on the basis that MedPay benefits would be paid as represented in the

19 MedPay policies.

20     179.   USAA-CIC misrepresented that it would reimburse MedPay claims

21 under the MedPay policies, and intentionally concealed and omitted material

22 information regarding the payments it would make under its insureds' MedPay

23 policies. The foregoing multifaceted scheme, which USAA- CIC failed to disclose

24 to its insureds at the time they entered into the MedPay policies, is directly

25 contrary to USAA-CIC's representations in the MedPay policies regarding the

26 payment of provider fees in connection with USAA-CIC's insureds' MedPay

27 claims.

28

SHERNOFF BIDART ECHEVERRIA LLP
LAWYERS FOR INSURANCE POLICYHOLDERS

CLASS ACTION COMPLAINT

180.   USAA-CIC had a duty to disclose its multifaceted, improper, and unconscionable scheme to deny and reduce the payment of MedPay benefits because USAA-CIC affirmatively represented to its insureds in its MedPay policies that it would pay provider fees in accordance with the MedPay policies.

181.   Had Plaintiff and the putative class been aware of USAA-CIC's multifaceted scheme to deny or reduce their MedPay benefits, they would not have paid premiums to USAA-CIC to obtain the MedPay policies from USAA-CIC.

182.   USAA-CIC violated California Insurance Code § 781 because it knew or should have known that its statements regarding reimbursement in its MedPay policies were false in light of USAA-CIC's multifaceted, improper, and unconscionable scheme to deny and reduce the payment of MedPay benefits.

183.   Plaintiff and the putative class suffered injury as a direct result of USAA-CIC's violation of California Insurance Code § 781. Specifically, Plaintiff and the putative class had their MedPay benefits improperly reduced or denied by USAA-CIC's multifaceted scheme. Moreover, Plaintiff and the putative class paid insurance premiums for MedPay policies that did not, as a result of USAA-CIC's multifaceted scheme, reimburse the claims as promised under the MedPay policies.

184.   Defendants engaged in a conspiracy to violate Insurance Code § 781 by implementing a multifaceted, improper, and unconscionable scheme to deny and reduce the payment of MedPay benefits. In furtherance of its scheme to deny and reduce the payment of MedPay benefits, USAA-Association contracted with AIS, a third-party, to reduce and deny reimbursement of USAA insureds' MedPay benefits using its MBA process. The MBA process is designed to categorically eliminate or reduce the amount USAA pays for their insureds' health care expenses based upon various codes, including PPO codes, DOC codes, PR codes, GR codes, IR codes, and RF codes.

185.   The conspiracy was fully formed and involved USAA-Association, USAA-CIC, USAA-GIC, Garrison, and AIS. Each Defendant and AIS individually

CLASS ACTION COMPLAINT

were part of the conspiracy and all Defendants and AIS agreed as to the purpose of the conspiracy, which was to implement a multifaceted, improper, and unconscionable scheme to deny and reduce the payment of MedPay benefits. The improper reductions and denials USAA insureds' MedPay benefits in furtherance of this conspiracy were done pursuant to the contract between USAA-Association and AIS, which sets forth how AIS reduces and denies these benefits.

186. Each Defendant was aware of the other Defendants' roles in the conspiracy.

187. Each Defendant agreed among themselves and intended that the fraud by deceit was perpetrated on Plaintiff and USAA insureds who comprise the putative class members.

188. Each Defendant had contracts and/or on-going cooperative relationships with at least one of the other co-conspirators responsible for the harm suffered by Plaintiff and putative class members.

189. Significant wrongful conduct was committed in furtherance of the conspiracy, including the making of material fraudulent misrepresentations, and omitting material information that induced Plaintiff to pay insurance premiums for MedPay policies, namely concealing its multifaceted scheme designed and implemented to avoid paying its insureds' MedPay benefits in accordance with USAA's representations made in its MedPay policies.

190. Each Defendant committed at least one overt act in furtherance of the conspiracy. These acts in furtherance of the conspiracy included, among others:

a. Defendant USAA-Association, on behalf of itself and its subsidiaries USAA-CIC, USAA-GIC and Garrison, made an overt act in furtherance of the conspiracy by contracting with AIS on behalf of itself and all other USAA entities for the express purpose of exercising the conspiracy.

b. Defendants also made substantial overt acts in furtherance of the conspiracy by using, as more fully detailed in the general allegations supra,

SHERNOFF BIDART ECHEVERRIA LLP
LAWYERS FOR INSURANCE POLICYHOLDERS

CLASS ACTION COMPLAINT

AIS's MBA System to arbitrarily and unlawfully reduce and deny Defendants' insureds' Medpay claims using, inter alia, the following codes:

       i.     Defendants reduced MedPay claim payments based on EORs, sent by AIS to insureds, containing PPO codes stating that "[t]his service provider participates in a PPO network and has agreed to accept as payment in full the reimbursement amount listed in this line for the service listed, and also has agreed not to seek any additional payment from the patient," while at the same time, USAA had not entered into direct PPO agreements with providers;

      ii.     Defendants denied MedPay claim payments based on PR codes contained in EORs, sent by AIS to insureds, attaching a letter written by a physician (i) engaged by AIS; (ii) who conducts only a paper review; (iii) who does not physically examine the patient or speak with the patient; and (iv) who has never spoken with the insureds' provider regarding the reasonableness or necessity for the medical service, stating that the submitted documentation does not substantiate that the treatment provided is medically necessary and/or related to the loss, and without any independent investigation by USAA.

      iii.     Defendants reduced full payment of MedPay claims in EORs, sent by AIS to insureds, containing RF codes which arbitrarily reduce provider charges using a database containing unrelated Medicare charges associated with CPTs; and

      iv.     Defendants denied full payment of MedPay claims in EORs, sent by AIS to insureds, containing DOC codes which request unnecessary provider documents relating to treatment.

      v.     Defendants denied full payment of MedPay claims in EORs, sent by AIS to insureds, containing IR codes which request unnecessary provider information relating to treatment.

      vi.     Defendants improperly denied full payment of MedPay claims based on GR codes whereby USAA directs AIS to program its computer to

CLASS ACTION COMPLAINT

deny payment of medical bills covered under MedPay claims based on automatic bill processing through its computer based on relation to a motor vehicle collision, without USAA conducting any independent investigation, but instead relying only on AIS's arbitrary automated MBA process.

191.   Defendants conspired to violate California Insurance Code § 781(a) by failing to disclose to USAA insureds that Defendants had implemented a multifaceted, improper, and unconscionable scheme to deny and reduce the payment of MedPay benefits which USAA failed to disclose to its insureds in its policies and when communicating to its insureds regarding the reduction and denial of benefits, and which AIS failed to disclose to USAA insureds when communicating with them regarding the reduction and denial of benefits, including in the EORs AIS sent to them.

192.   Defendants conspired to violate California Insurance Code § 781 because they knew or should have known that the statements regarding reimbursement in USAA's MedPay policies, and the statements made by AIS in the EORs, were false in light of Defendants multifaceted, improper, and unconscionable scheme to deny and reduce the payment of MedPay benefits.

193.   Plaintiff and the putative class suffered injury as a direct result of Defendants' conspiracy to violate California Insurance Code § 781. Specifically, Plaintiff and the putative class had their MedPay benefits improperly reduced or denied by USAA's multifaceted scheme. Moreover, Plaintiff and the putative class paid insurance premiums for MedPay policies that did not, as a result of Defendants' multifaceted scheme, reimburse the claims as promised under the MedPay policies.

CLASS ACTION COMPLAINT

**FIFTH CLAIM FOR RELIEF**

**Negligence**

**Against All Defendants**

**(On Behalf of Plaintiff and the Class)**

194.    Plaintiff hereby repeats, realleges, and incorporates by reference each and every allegation contained above as though the same were fully set forth herein.

195.    USAA-CIC owed Plaintiff a duty of to exercise reasonable care to conduct an investigation into each bill for medical expenses submitted by its California insureds and otherwise disclose its multifaceted, improper, and unconscionable scheme to deny and reduce the payment of MedPay benefits because USAA-CIC affirmatively represented to its insureds in its MedPay policies that it would pay provider fees in accordance with the MedPay policies.

196.    USAA-CIC duties to use reasonable care also arose under California Insurance Code § 781(a), which prohibits any statement that is known, or should have been known, to be a misrepresentation to any other person for the purpose of inducing, or tending to induce, such other person to take out a policy of insurance or cause of person to forfeit an existing policy of insurance.

197.    USAA-CIC breached its duties to Plaintiff and Class members by, among other things:

a.    Improperly delegating its claims adjustment function to AIS which uses its MBA process to arbitrarily and improperly deny or reduce MedPay claims;

b.    Improperly reducing MedPay claim payments based on an EOR stating that "[t]his service provider participates in a PPO network and has agreed to accept as payment in full the reimbursement amount listed in this line for the service listed, and also has agreed not to seek any additional payment from the



CLASS ACTION COMPLAINT

1  patient," while at the same time, USAA had not entered into PPO or PPN

2  agreements with providers;

3         c.    Improperly reducing MedPay claim payments based on an EOR

4  attaching a letter written by a physician (i) engaged by AIS; (ii) who is not licensed

5  in the relevant state; (iii) who does not specialize in the area under review; (iv)

6  who conducts only a paper review; (v) who does not physically examine the patient

7  or speak with the patient; and (vi) who has never spoken with the insureds'

8  provider regarding the reasonableness or necessity for the medical service, stating

9  that the submitted documentation does not substantiate that the treatment provided

10  is medically necessary and/or related to the loss, and without any independent

11  investigation by USAA;

12         d.    Improperly denying full payment of MedPay claims based on

13  DOC codes whereby USAA directs AIS to program its computer to deny payment

14  of medical bills covered under MedPay claims if certain documents are not

15  attached to the bills, even though the documentation is not needed to substantiate

16  the necessity of the billed treatments, and without USAA conducting any

17  independent investigation, but instead relying only on AIS's arbitrary automated

18  MBA process;

19         e.    Improperly denying full payment of MedPay claims by

20  improperly delegating its duty to evaluate and adjust MedPay claims to AIS which

21  used an arbitrary automated review process. This includes using arbitrary and

22  automated reason codes, including, *inter alia*, DOC, GR, IR, PR, and RF codes,

23  without USAA conducting an independent investigation; and

24         f.    Improperly denying full payment of MedPay claims based on

25  GR codes whereby USAA directs AIS to program its computer to deny payment of

26  medical bills covered under MedPay claims based on automatic bill processing

27  through its computer based on relation to a motor vehicle collision, without USAA

28

CLASS ACTION COMPLAINT

1    conducting any independent investigation, but instead relying only on AIS's

2    arbitrary automated MBA process.

3        198.    USAA-CIC further breached its duties under California Insurance

4    Code § 781(a) by failing to disclose to its insureds that USAA-CIC had

5    implemented a multifaceted, improper, and unconscionable scheme to deny and

6    reduce the payment of MedPay benefits. In furtherance of its scheme to deny or

7    reduce the payment of MedPay benefits, USAA contracted with AIS, a third-party,

8    to reduce or deny reimbursement of USAA-CIC's insureds' MedPay benefits using

9    its MBA process. The MBA process is designed to categorically eliminate or

10   reduce the amount USAA-CIC pays for its insureds' health care expenses based

11   upon various codes, including PPO codes, DOC codes, PR codes, GR codes, IR

12   codes, and RF codes.

13       199.    As a result of Defendants' improper reduction of MedPay

14   reimbursements based on non-existent direct PPO agreements with PPOs, insureds,

15   among other things, are balance-billed by their healthcare providers, become the

16   subject of collection actions by the providers seeking payment of the amounts that

17   USAA refuses to pay, and/or remain under the threat of such actions.

18       200.    As a result of Defendant's breaches, Plaintiff and the putative class

19   were induced to purchase MedPay polices on the basis that MedPay benefits would

20   be paid as represented in the MedPay policies.

21       201.    It was entirely foreseeable to USAA-CIC that Plaintiff and the Class

22   members would be harmed as a result of Defendants' improper reduction of

23   MedPay reimbursements.

24       202.    As a direct and proximate result of Defendants' improper reduction of

25   MedPay reimbursements, Plaintiff and Class members have been injured in fact

26   and suffered lost money or property in that USAA-CIC failed to provide benefits

27   owed to their insureds under the insurance policies USAA-CIC issued.

28

CLASS ACTION COMPLAINT

203.   Plaintiff and the Class members were harmed by Defendant's failure to exercise reasonable care as described above, and that harm was reasonably foreseeable.

204.   Plaintiff and the putative class suffered injury as a direct result of USAA-CIC's violation of California Insurance Code § 781. Specifically, Plaintiff and the putative class had their MedPay benefits improperly reduced or denied by USAA-CIC's multifaceted scheme. Moreover, Plaintiff and the putative class paid insurance premiums for MedPay policies that did not, as a result of USAA-CIC's multifaceted scheme, reimburse the claims as promised under the MedPay policies.

205.   Plaintiff and Class Members are within the class of persons that the California Insurance Code was intended to protect.

206.   The harm that is the type of harm the California Insurance Code was intended to guard against.

207.   Defendants' violation of California Insurance Code also independently constitutes negligence per se.

208.   As a direct and proximate result of Defendants' negligence per se, Plaintiff and the Class have suffered, and continue to suffer, injuries and damages arising from Defendants' multifaceted, improper, and unconscionable scheme to deny and reduce the payment of MedPay benefits.

209.   Defendants' misconduct as alleged herein is fraud under Cal. Civ. Code § 3294(c)(3) in that it was deceit or concealment of a material fact known to the Defendants conducted with the intent on the part of Defendants of depriving Plaintiff and Class Members of "legal rights or otherwise causing injury." In addition, Defendants' misconduct as alleged herein is malice or oppression under Cal. Civ. Code § 3294(c)(1) and (c)(2) in that it was despicable conduct carried on by Defendants with a willful and conscious disregard of the rights or safety of Plaintiff and Class Members and despicable conduct that has subjected Plaintiff and Class Members to hardship in conscious disregard of their rights. As a result,

CLASS ACTION COMPLAINT

1    Plaintiff and Class Members are entitled to punitive damages against Defendants
2    under Cal. Civ. Code § 3294(a).

3                          **SIXTH CLAIM FOR RELIEF**
4                              **Declaratory Relief**
5                            **Against All Defendants**
6                    **(On Behalf of Plaintiff and the Class)**

7         210.   Plaintiff hereby repeats, realleges, and incorporates by reference each
8    and every allegation contained above as though the same were fully set forth
9    herein.

10        211.   There exists a present controversy between the parties as to whether
11   USAA's use of AIS's MBA process using RF codes, PPO codes, DOC codes, GR
12   codes, and sham medical reviews to deny and reduce benefits owed to USAA's
13   insureds violates California's insurance law, including statutory and regulatory
14   requirements regarding insurance claims handling pursuant to California Insurance
15   Code § 790.03(h) and Cal. Code Regs. tit. 10, § 2695.7.

16        212.   Plaintiff and the members of the Class contend that USAA's use of
17   AIS and its MBA process to wrongfully and arbitrarily deny or reduce USAA's
18   insureds' MedPay claims violates California insurance law, including California
19   Insurance Code § 790.03(h) and Cal. Code Regs. tit. 10, § 2695.7.

20        213.   208.  Accordingly, Plaintiff and the members of the Class request the
21   Court to issue an order declaring that USAA's use of AIS and its MBA process to
22   wrongfully and arbitrarily deny or reduce USAA's insureds' MedPay claims using
23   RF codes, PPO codes, DOC codes, GR codes and medical reviews violates
24   California insurance law, including California Insurance Code § 790.03(h) and Cal.
25   Code Regs. tit. 10, § 2695.7.

26   **VI.    REQUEST FOR RELIEF**
27        WHEREFORE, Plaintiff respectfully requests that this Court enter an order
28   granting the following relief against Defendants:

CLASS ACTION COMPLAINT

a. An order certifying this action as a class action under Federal Rule of Civil Procedure 23, defining the Class requested herein, appointing the undersigned as Class Counsel, and finding that Plaintiff is a proper representative of the Class requested herein;

b. Appropriate declaratory and injunctive relief enjoining USAA from continuing its improper and unlawful claims handling practices as set forth herein;

c. An order requiring Defendant to pay all costs associated with class notice and administration of class-wide relief;

d. An award to Plaintiff and all members of the Class of compensatory, consequential, incidental, nominal, actual, statutory, and exemplary/punitive damages, in an amount to be determined at trial;

e. An award of attorneys' fees, costs, and expenses, as provided by law or equity;

f. An award for equitable relief requiring restitution and disgorgement of the revenues wrongfully retained as a result of Defendants' wrongful conduct;

g. An order requiring Defendants to pay pre-judgment and post-judgment interest, as provided by law or equity; and

h. Such other and further relief as the Court may deem just and proper.

Dated:  August 29, 2024          SHERNOFF BIDART ECHEVERRIA LLP


                                 By:  ___/s/ Ricardo Echeverria_____
                                      MICHAEL J. BIDART
                                      RICARDO ECHEVERRIA
                                      Attorneys for Plaintiff and the Proposed Class

CLASS ACTION COMPLAINT

## JURY DEMAND

Plaintiff Denise Stott demands a trial by jury on all claims in this Complaint so triable.

Dated:  August 29, 2024          SHERNOFF BIDART ECHEVERRIA LLP


By:  ___/s/ *Ricardo Echeverria*___
          MICHAEL J. BIDART
          RICARDO ECHEVERRIA
          Attorneys for Plaintiff and the Proposed
          Class

CLASS ACTION COMPLAINT